# MECHANICS' AND METALS NATIONAL BANK OF THE CITY OF NEW YORK v. ERNST ET AL., AS TRUSTEES IN BANKRUPTCY OF HUM- PHREY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 446.   Argued October 20, 1913.—Decided November 3, 1913.

*National City Bank* v. *Hotchkiss, ante,* p. 50, followed to effect that the delivery by the bankrupt of securities to a bank to secure a clearance loan constituted an illegal preference.

This court approves the findings of the court below that the bank knew of the impending bankruptcy when it demanded and accepted se- curity for an existing loan.

An unusual proceeding in the banking business, such as an officer leaving the bank and going to the customer's office and demanding additional security for a loan made earlier the same day, indicates knowledge of the impending bankruptcy of such customer.

A general promise to give security on demand puts the creditor in no better position than an agreement to pay money and does not justify a delivery of securities after knowledge of impending bank- ruptcy. It is an illegal preference.

A deposit made after the bank's officers have forbidden payment of checks against the bankrupt's deposit account is a payment and a preference and a set-off cannot be allowed.

200 Fed. Rep. 295, affirmed.

THE facts, which involve the determination of the question of whether the delivery of securities by a broker immediately preceding his bankruptcy to a bank to secure its loan was an illegal preference, are stated in the opinion.

*Mr. Lewis H. Freedman,* with whom *Mr. Adrian H. Larkin* and *Mr. Leland B. Garretson* were on the brief, for appellant:

Under the agreement when the loan was made, as amplified and modified by the general custom, appellant acquired an equitable lien upon, or right in or to, the money constituting the "day" or "clearance" loan and in or to all securities or proceeds of whatever nature realized, cleared or obtained possession of by the bankrupt Fiske & Co. by the use of such loan in so far as such securities or proceeds were or could be identified as so realized, cleared or reduced to possession.

"A general custom is the common law itself, or a part of it." Written contracts, by implication, incorporate custom into them. *Underwood* v. *Greenwich Ins. Co.*, 161 N. Y. 413, 423; *Newhall* v. *Appleton*, 114 N. Y. 140; *Walls* v. *Bailey*, 49 N. Y. 464; *Botany Works* v. *Wendt*, 22 Misc. Rep. 156; *Hostetter* v. *Park*, 137 U. S. 30, 40; *Robinson* v. *United States*, 13 Wall. 363; *Hazard* v. *New England Ins. Co.*, 8 Pet. 557; *Hartshorne* v. *Union Ins. Co.*, 36 N. Y. 172.

There was an equitable lien, and equity regards as done that which ought to be done. Pom. Eq. Jur., 3d ed., § 1235; *Walker* v. *Brown*, 165 U. S. 654, 664; *Goodnough Co.* v. *Galloway*, 156 Fed. Rep. 504, 510; *Howard* v. *Delgado*, 121 Fed. Rep. 26, 30; *Chattanooga Bank* v. *Rome Iron Co.*, 102 Fed. Rep. 755, 758; *Ingersoll* v. *Coram*, 211 U. S. 335, 368; *Hovey* v. *Elliott*, 118 N. Y. 124; *Holroyd* v. *Marshall*, 10 H. L. C. 191.

One may by express agreement create a charge or claim in the nature of a lien on property of which he is the owner or possessor, and equity will establish and enforce such charge or claim not only against the party who stipulated to give it, but also against third persons, who are either volunteers, or who take the estate on which the lien is agreed to be given, with notice of the stipulations. *Ketchum* v. *St. Louis*, 101 U. S. 306; *Hauslet* v. *Harrison*, 105 U. S. 401; *Carr* v. *Hamilton*, 129 U. S. 252; *Fourth Street Bk.* v. *Yardley*, 165 U. S. 634; *Walker* v. *Brown*, 165 U. S. 654;

*Ingersoll* v. *Coram,* 211 U. S. 335; *Hurley* v. *Atchison &c. Ry. Co.,* 213 U. S. 126; *Sexton* v. *Kessler,* 225 U. S. 90; *Dressel* v. *Lumber Co.,* 119 Fed. Rep. 531; *First National Bank* v. *Penn. Trust Co.,* 124 Fed. Rep. 968; *Fisher* v. *Zollinger,* 149 Fed. Rep. 54; *Union Trust Co.* v. *Bulkeley,* 150 Fed. Rep. 510; *Mills* v. *Virginia-Carolina Co.,* 164 Fed. Rep. 168; *Re Farmers Supply Co.,* 170 Fed. Rep. 502; *Goodnough Co.* v. *Galloway,* 171 Fed. Rep. 940; *Re National Cash Register Co.,* 174 Fed. Rep. 579.

If such a contract is shown to exist payments made in pursuance thereof will not be invalidated as preferences by the operation of the Bankruptcy Act. *Humphrey* v. *Tatman,* 198 U. S. 91; *Thompson* v. *Fairbanks,* 196 U. S. 516; *Re Perlhefter,* 177 Fed. Rep. 299, 303.

The agreement creating the lien may be either verbal or in writing. *Riddle* v. *Hudgins,* 58 Fed. Rep. 490; *National Bank* v. *Rogers,* 166 N. Y. 380; *Hamilton Trust Co.* v. *Clemes,* 163 N. Y. 423; *Am. Sugar Co.* v. *Fancher,* 145 N. Y. 552; *Hovey* v. *Elliott,* 118 N. Y. 124; *Coats* v. *Donnell,* 94 N. Y. 168; *Spring* v. *Short,* 90 N. Y. 538; *Husted* v. *Ingraham,* 75 N. Y. 251; *Payne* v. *Wilton,* 74 N. Y. 348; *McCaffrey* v. *Woodin,* 65 N. Y. 459; *Parshall* v. *Eggert,* 54 N. Y. 18; *Rochester Bank* v. *Jones,* 4 N. Y. 497.

*Sexton* v. *Kessler,* 225 U. S. 90, governs this case.

Appellee was entitled to set off the fifty-four thousand dollar deposit.

The moment the checks composing that deposit were received by appellant and passed to the credit of the brokers the funds became appellant's property and the relation of debtor and creditor was created and the right of set-off established. *New York County Bank* v. *Massey,* 192 U. S. 138; *National Bank* v. *Burkhart,* 100 U. S. 686; *Cassidy* v. *Uhlman,* 170 N. Y. 505, 515; *Joyce* v. *Auten,* 179 U. S. 591; *Scott* v. *Armstrong,* 146 U. S. 499; *Straus* v. *T. N. Bank,* 122 N. Y. 379.

The case involves no question of actual fraud and

appellees failed to establish by a preponderance of evidence that appellant received a voidable preference.

The burden is on the trustee to prove by a preponderance of evidence every element necessary to constitute a preference. *Barbour* v. *Priest,* 103 U. S. 293; *Kimmerle* v. *Farr,* 189 Fed. Rep. 295; *In re Leech,* 171 Fed. Rep. 622. The insolvent's estate must have been diminished as a result of the transaction. *Coder* v. *Arts,* 213 U. S. 223; aff'g 152 Fed. Rep. 949; *Hardy* v. *Gray,* 144 Fed. Rep. 922; *Calhoun Bank* v. *Cain,* 152 Fed. Rep. 983; *Tumlin* v. *Bryan,* 165 Fed. Rep. 166; *In re Neill-Pinckney Co.,* 170 Fed. Rep. 481; *Sparks* v. *Marsh,* 177 Fed. Rep. 739; *Kimmerle* v. *Farr,* 189 Fed. Rep. 295; Remington on Bank., §§ 1276 *et seq.;* Collier on Bank. (9th ed.), 790–791.

The debtor must have been insolvent within the meaning of the statute, and insolvency in that sense has a different meaning from that ordinarily understood, namely, an inability to meet maturing obligations. *Pirie* v. *Chicago Title Co.,* 182 U. S. 438, 451; *McDonald* v. *Clear-Water Short Line,* 164 Fed. Rep. 1007; *Hardy* v. *Gray,* 144 Fed. Rep. 922; *Re Klein,* 197 Fed. Rep. 241; *Butler Paper Co.* v. *Goembel,* 143 Fed. Rep. 295; Remington, § 1343; Collier (9th ed.), 8.

The payment must have been in satisfaction of or on account of an antecedent debt. *Coder* v. *Arts,* 152 Fed. Rep. 943; *S. C.,* 213 U. S. 223.

Payment within four months of the filing of the petition must be established, and insolvency as defined by the statute must have existed at the time when the payment was made. *Tumlin* v. *Bryan,* 165 Fed. Rep. 166, 168; *Rutland County Bank* v. *Graves,* 156 Fed. Rep. 168; *Butler Paper Co.* v. *Goembel,* 143 Fed. Rep. 295; *In re Rome Planing Co.,* 96 Fed. Rep. 812; *Troy Wagon Works* v. *Vastbinder,* 130 Fed. Rep. 232, 234.

The inhibition of the statute applies only to preferences given when the debtor is insolvent in fact, and a lien per-

fected before such insolvency is not affected. *In re Witten-berg Veneer Co.*, 108 Fed. Rep. 593; aff'd *sub nom. Mc-Donald* v. *Daskam*, 116 Fed. Rep. 276.

Where quotations vary enormously in a few moments, as in "panicky" times, the law will recognize the fraction of a day and the rule that the law takes no notice of the fraction of a day is inapplicable. *Upson* v. *Mount Morris Bank*, 103 N. Y. App. Div. 367.

The adjudication of bankruptcy did not relate back to the filing of the petition and is not evidence of insolvency prior to such filing. *Tumlin* v. *Bryan*, 165 Fed. Rep. 166; *In re Chappell*, 113 Fed. Rep. 545; *In re Alexander*, 102 Fed. Rep. 464; *In re Rome Planing Co.*, 96 Fed. Rep. 812.

The payment did not enable the bank to obtain a greater percentage of its claims than any other creditor of the same class.

There being no other creditor of this class there could be no violation of the statute. *Swarts* v. *Fourth National Bank*, 117 Fed. Rep. 1; *Crooks* v. *People's Bank*, 46 N. Y. App. Div. 335.

The debtor making such payment must have intended to give such a preference. *Alexander* v. *Redmond*, 180 Fed. Rep. 92; *Hardy* v. *Gray*, 144 Fed. Rep. 922; *Kimmerle* v. *Farr*, 189 Fed. Rep. 295; *In re Leech*, 171 Fed. Rep. 622; *Tumlin* v. *Bryan*, 165 Fed. Rep. 166; *Debus* v. *Yates*, 193 Fed. Rep. 427.

Silence as to one's financial condition cannot be construed as an admission of insolvency. *Wilson* v. *City Bank*, 17 Wall. 473; *Re Jackson Mfg. Co.*, Fed. Cas. No. 7153; *Sawyer* v. *Turpin*, 91 U. S. 114; *Clark* v. *Iselin*, 21 Wall. 360; *Watson* v. *Taylor*, 21 Wall. 378; *Cook* v. *Tullis*, 18 Wall. 322; Remington on Bank., § 1829.

The creditor receiving the payment must have knowledge or have had reasonable cause to believe he was receiving a preference. *Collett* v. *Bronx Nat'l Bk.*, 200 Fed. Rep. 111; *Re Klein*, 197 Fed. Rep. 241; *Re The Leader*,

190 Fed. Rep. 624; *Re Pfaffinger,* 154 Fed. Rep. 523; Collier on Bank. (9th ed.), 816.

Mere suspicion of insolvency is not sufficient to satisfy the statutory requirement. *Grant* v. *National Bank,* 97 U. S. 80; *Powell* v. *Gates City Bank,* 178 Fed. Rep. 609. See, also, *Stucky* v. *Masonic S. Bank,* 108 U. S. 74; *Barbour* v. *Priest,* 103 U. S. 293; *Sparks* v. *Marsh,* 177 Fed. Rep. 739; *First National Bank* v. *Abbott,* 165 Fed. Rep. 852; *In re Pfaffinger,* 154 Fed. Rep. 523; *Off* v. *Hakes,* 142 Fed. Rep. 364; *In re Eggert,* 102 Fed. Rep. 735.

The insolvent's estate was not diminished as a result of the transaction. *N. Y. County Bank* v. *Massey,* 192 U. S. 138, 147; *Continental Trust Co.* v. *Chicago Title Co.,* 229 U. S. 435; *Newport Bank* v. *Herkimer Bank,* 225 U. S. 178; *Wild* v. *Provident Trust Co.,* 214 U. S. 292; *Jaquith* v. *Alden,* 189 U. S. 78; *In re Sagor,* 121 Fed. Rep. 658; *Gans* v. *Ellison,* 114 Fed. Rep. 734; *Dressel* v. *North State Lumber Co.,* 107 Fed. Rep. 225; Remington on Bank., § 1296; Collier on Bank. (9th ed.), 802.

Appellees as trustees in bankruptcy acquired no greater rights than had the bankrupts. *Zartman* v. *First Nat'l Bank,* 216 U. S. 134, 138; *Hurley* v. *Atchison &c. Ry. Co.,* 213 U. S. 126; *Thomas* v. *Taggart,* 209 U. S. 385; *Richardson* v. *Shaw,* 209 U. S. 365; *Security Warehousing Co.* v. *Hand,* 206 U. S. 415; *York Mfg. Co.* v. *Cassell,* 201 U. S. 344; *Thompson* v. *Fairbanks,* 196 U. S. 516.

*Mr. Daniel P. Hays,* with whom *Mr. Edwin D. Hays* was on the brief, for appellees.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Appeals reached upon the same opinion that disposed of *The National City Bank* v. *Hotchkiss,* just decided, *ante,* p. 50. (The judgment of the District Court will be found

in 200 Fed. Rep. 295.)   This case arose at the same time and differs but little from that in its facts, as to which, as in the other case, the master, the District Court and the Circuit Court of Appeals all agree.

The advance in this case was made at about ten on the following note to the firm signing it "Please loan us today $400000.  Crediting this amount to our account and oblige. J. M. Fiske & Company."   This sum was credited on the firm's deposit account, on which there was already $36,239.47.  Before noon the bank certified and afterwards paid checks for $276,679.67.   Between 11 and 12 the cashier, hearing that there was trouble in the stock market and with J. M. Fiske & Co., ordered that no more checks should be paid or certified.  He then went to the brokers' office; saw Mr. Sherwood, a member of the firm, at about twelve and after getting an evasive answer to an inquiry as to the rumor, said that the firm had made no deposits on that day, and was told that one was on its way.  ($54,048.08 were in fact paid in after the cashier's order to stop payment.)  He then told Mr. Sherwood that he had better give him some securities, that he ought to give additional securities on the bank's loans, and after consultation Mr. Sherwood did so and the cashier returned to the bank.  We may assume for purposes of decision that the securities with a small exception were obtained by the use of the clearance loan.

At forty minutes after twelve the brokers gave notice to the stock exchange that they were unable to meet their obligations and an involuntary petition in bankruptcy was filed against them at twenty-five minutes past three. This suit is for the proceeds of the securities, (which were sold by the bank), and for the sum deposited as we have stated.  In view of our decision in the other case only one or two matters need mention.  It is somewhat more pressed that the bank had not reasonable ground to believe that the brokers' property at a fair valuation would be in-

sufficient to pay their debts, and therefore had not ground to believe that the brokers were insolvent within the meaning of the Bankruptcy Act of July 1, 1898, c. 541, § 1 (15), 30 Stat. 544. We think it too plain to need argument that the findings below that the firm was insolvent, knew that it was insolvent and intended a preference, were correct. These brokers were ruined by the collapse of the pool mentioned in the other case, and apart from any knowledge that the bank may have had as to their interest in the stock concerned, the entirely unusual course of the cashier in leaving his bank to get additional security (not merely proceeds of the clearance loan upon a claim of lien) and the circumstances are sufficient to prevent our going behind the findings below. Really no other conclusion could have been reached.

On the question of lien the evidence does not differ enough from that in the other case to need further discussion. The bankrupts were under an agreement with the bank, of the usual sort, giving the bank a general lien on all securities in its hands for all liabilities of the firm and a right to require additional approved securities to be lodged with it,. &c. But a general promise to give security on demand puts the creditor in no better position than an agreement to pay money. *Sexton* v. *Kessler*, 225 U. S. 90, 98.

The so-called deposit of $54,048.08 was paid in after the cashier had forbidden the payment of checks against the deposit account and therefore rightly was held to be a payment and a preference. A set-off properly was denied.

*Decree affirmed.*