## BANK OF COMMERCE & TRUSTS v. HATCHER.

### No. 3132.

Circuit Court of Appeals, Fourth Circuit.

June 17, 1931.

O. R. Cunningham and Robert H. Talley, both of Richmond, Va., for appellant.

R. Carter Scott, Jr., of Richmond, Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree in a suit instituted in the court below under section 60b of the Bankruptcy Act, 11 USCA § 96 (b). The suit was brought by the trustee in bankruptcy of the Allport Construction Company against the Bank of Commerce & Trusts of Richmond, Va., Its purpose was to recover the amount of a deposit made by the bankrupt, which was alleged to constitute an unlawful preference within the meaning of the Bankruptcy Act. There was a decree in favor of the trustee, and the bank has appealed.

The construction company was adjudged bankrupt on December 17, 1927. For some time prior thereto it had been insolvent and the fact of its insolvency had been known to the bank. The deposit in question was made under the following circumstances: The construction company had undertaken the completion of a road building contract as subcontractor under a contract awarded to C. S. Luck & Sons. One of the conditions of the contract between bankrupt and Luck & Sons was that the moneys received by bankrupt thereunder were to be deposited in the bank and were to be paid out only on checks approved by the bank's vice president. The bankrupt was indebted to the bank in a considerable amount and had promised to make a substantial payment on this indebtedness. The payment was not made according to

promise;. and on December 2d bankrupt had no balance whatever to its credit in the bank. On that date bankrupt's bookkeeper, for the purpose of paying certain of its creditors, handed the vice president of the bank checks aggregating $8,797.60 drawn in their favor, with request that he approve them, and at the same time handed him a certified check for like amount drawn in favor of bankrupt by C. S. Luck & Sons and indorsed for deposit. The vice president refused to approve the checks drawn in favor of the creditors, and returned them, but credited bankrupt's account with the check of Luck & Sons and applied the balance thus created on bankrupt's indebtedness to the bank. This credit was reduced by the later presentation of checks which had been previously drawn by the bankrupt and approved by the bank's vice president, so that the amount applied on the indebtedness to the bank was reduced to $7,661.78. Decree was entered in favor of the trustee and against the bank for this amount.

The question in the case, as stated by the judge below, is whether there was a deposit in regular course, whereby the relationship of debtor and creditor was created between the bank and bankrupt, or whether there was an attempt at deposit which the bank by its action converted into a payment on pre-existing indebtedness. In the former case the right of set-off would exist under section 68a of the Bankruptcy Act, 11 USCA § 108(a); in the latter there would be a transfer void as preferential under section 60b, 11 USCA § 96(b). The judge held, and we think correctly, that the transaction constituted a preferential transfer.

We had occasion to examine the questions here involved in the recent case of Citizens' Nat. Bank of Gastonia v. Lineberger (C. C. A. 4th) 45 F.(2d) 522, 527. After a thorough examination of the authorities, we laid down what we conceive to be the true rule relating to deposits in bank by insolvents as follows: "An ordinary deposit in a bank, * * * is not a 'transfer' within the meaning of this section. Section 1(25) of the Bankruptcy Act, 11 USCA § 1(25), defines the word transfer as used in the act as follows: '(25) "transfer" shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security.' A deposit in a bank is not a sale or parting with property, or its possession, as a pay-ment, pledge, mortgage, gift, or security. It does not deplete the estate of the depositor, but results in substituting for currency, bank notes, checks, drafts, and other bankable items a corresponding credit with the bank, which may be checked against, and which provides the depositor with the medium of exchange in universal use in the transaction of business. A deposit of funds differs from a payment in the essential particular that it is withdrawable at the will of the depositor. Of course a deposit may be made the cloak for some other transaction, such as payment or the giving of security; and in such case equity, which looks through form to substance, will treat the transaction according to its real nature. But if the deposit is in reality a deposit, made in good faith as such, subject to the withdrawal of the depositor, and not made as a cloak for a payment or other forbidden transaction, it is not a transfer within the meaning of the Bankruptcy Act and cannot be attacked as preferential, even though it may have been made when the depositor was insolvent, and even though the bank, by applying it as a set-off, may have obtained a greater percentage on a debt which it holds against its insolvent depositor than his other creditors can obtain."

But after stating that deposits made in regular course of business might be set off even though made when the bankrupt was known to be insolvent, we distinguished the case of deposits made otherwise than in regular course of business, as where made for the purpose of giving the bank a preference, or where made as payments and not for the purpose of creating a balance subject to check. In this connection we said: "Of course, where deposits are not made in the regular course of business, as where they are made fraudulently and collusively for the purpose of giving the bank a preference, or where they are not in reality deposits at all, but are payments, the right of set-off does not exist, and they may be recovered as preferential. Thus in Union Trust Co. v. Peck (C. C. A. 4th) 16 F.(2d) 986, reported below as In re Almond-Jones Co. [D. C.] 13 F.(2d) 152, the deposits were not made in the ordinary course of business, but were made to build up the account so that it might be applied in payment of the bank's claim. See 13 F.(2d) at pages 156 and 157. In Blue v. Herkimer National Bank (C. C. A. 2d) 30 F.(2d) 256, it appeared that moneys were collected and deposited for the purpose of being applied on the maturing notes of the bankrupt. In Kolkman v. Manufacturers' Trust Co. (C. C.

A. 2d) 27 F.(2d) 659, it appeared that the deposits were made by the bankrupt in order that the bank, by exercising its right of set-off, might obtain a preferential payment. In Elliotte v. American Savings Bank (C. C. A. 6th) 18 F.(2d) 460; First Nat. Bank of El Centro v. Harper (C. C. A. 9th) 254 F. 641; and In re Kellar (D. C.) 110 F. 348, deposits were applied in payment of overdrafts, and it was held that they were not deposits in ordinary course subject to check, but were in reality payments on pre-existing debts. In Mechanics' & Metals' Nat. Bank v. Ernst, 231 U. S. 60, 34 S. Ct. 22, 58 L. Ed. 121, deposit was made after the officers of the bank had forbidden payment of depositor's checks; and it was held that for this reason the deposit was in reality a payment, not a deposit in ordinary course. In Rupp v. Commerce Guardian Trust & Savings Bank (C. C. A. 6th) 32 F.(2d) 234, the account of the depositor had been closed and the deposits in question were accepted for application on the indebtedness of depositor and were held to be mere payments. In Bank of California v. Brainard (C. C. A. 9th) 3 F.(2d) 3, bankrupt deposited checks for collection, was given immediate credit for same, and drew a check against the deposit in payment of a note due the bank; and it was held that this was evidence for the jury that the transaction was in reality a preferential payment and not a deposit."

It is perfectly clear that the transaction here involved did not constitute a deposit in regular course of business. The distinguishing characteristic of such a deposit is that it creates a balance in favor of the depositor which is subject to withdrawal at his will. Here the deposit lacked absolutely this characteristic. It was intended by the bankrupt to provide for the payment of certain checks which were presented for approval, not to create a balance in the bank subject to its control. It was received by the bank, not for the purpose of creating such balance, but for the purpose of being applied on the pre-existing indebtedness of the bankrupt. The balance created was at no time subject to the withdrawal of the bankrupt and was promptly applied by the bank upon the bankrupt's indebtedness. The net result of what took place was the transfer of the certified check of Luck & Sons to the bank as payment upon pre-existing indebtedness, not the creation of a deposit balance subject to withdrawal by the bankrupt in ordinary course.

The case of Mechanics' & Metals' Bank v.

Ernst, 231 U. S. 60, 34 S. Ct. 22, 23, 58 L. Ed. 121, is directly in point. In that case a deposit was made after the cashier of the bank had ordered that no more checks of bankrupt should be paid. The court said: "The so-called deposit of $54,048.08 was paid in after the cashier had forbidden the payment of checks against the deposit account," and therefore rightly was held to be a payment and a preference. A set-off properly was denied." Here the deposit was made at the time that checks were presented for approval. The bank's vice president refused to approve them and he did this solely because he desired that the proceeds of the check deposited be applied on the indebtedness due the bank. There can be no distinction between such case and one where deposits are received after instructions have been given that checks against the deposit account are not to be paid. The principle upon which the right of set-off is denied in either case is that the bank, by refusing to permit checks to be paid from the account, has evinced an unequivocal intention that the deposit balance shall not be subject to withdrawal by the depositor, but shall be applied on the indebtedness due the bank, and consequently deposits thereafter made have the effect of payments and not of creating an ordinary deposit balance.

There was no error, and the decree appealed from will be affirmed.

Affirmed.