### In re PERPALL.

#### Petition of PRENTICE.

#### (Circuit Court of Appeals, Second Circuit. November 17, 1919.)

#### No. 37.

1. TRUSTS ⊜⟶33—BROKER'S DAY LOAN CREATES NO TRUST.

A broker's day loan, made by a bank by crediting the amount to the broker's account, taking an agreement that he would use the money to acquire or release stocks or securities, hold them in trust, and turn them or their proceeds over to the bank before the close of the day, unless the loan was sooner paid, *held* not to create a trust fund, but to be merely a loan of money, with an agreement to pledge the securities.

2. BANKRUPTCY ⊜⟶184(2)—UNRECORDED PLEDGE AGREEMENT VOID UNDER LAWS OF STATE.

Laws N. Y. 1916, c. 348, amending section 230 of the Lien Law, by providing in effect that written mortgages, pledges, or liens securing day loans, covering securities to be delivered on the same day, shall be valid during such day without record, but in case of nondelivery must be filed on the following day, contemplates liens on specific securities, and a written agreement to deliver in pledge securities not identified, which was not filed on the next day, *held* not to create a lien on securities in the hands of the borrower's receiver in bankruptcy.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Clarence C. Perpall, doing business as Clarence C. Perpall & Co., bankrupt. On petition of Ezra P. Prentice, trustee, to revise an order in favor of the Continental National Bank of New York. Reversed.

See, also, 256 Fed. 758, 168 C. C. A. 104.

Rosenberg & Ball, of New York City (J. N. Rosenberg, of New York City, of counsel), for receiver.

S. K. Lichtenstein, of New York City (M. L. Lesser, of New York City, of counsel), for bankrupt.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is a petition of the trustee in bankruptcy of one Perpall to revise an order of the District Court directing him to turn over to the Continental Bank of New York certain moneys and securities that came into his possession as receiver.

[1] July 1, 1918, between 3 and 4 p. m., an involuntary petition in bankruptcy was filed against Perpall, a stockbroker trading under the

name of Clarence C. Perpall & Co. At 10 a. m. of the same day Perpall had made the usual broker's day loan of the Continental Bank of New York under the following agreement:

"New York, July 1, 1918.

"The undersigned hereby applies to the Continental Bank of New York for a loan of fifty thousand dollars ($50,000), to be credited to the account of the undersigned, upon the terms and conditions below stated, and to be repaid at or before the close of business this day. The avails of said loan shall be received and used by the undersigned only for one or both of the following purposes: To pay, in whole or in part, the purchase price of, and thus to obtain, certain securities which the undersigned has contracted to purchase and receive; or to pay, in whole or in part, another loan or other loans heretofore made to the undersigned, and thus to release certain securities held as collateral to such other loan or loans. The undersigned, as trustee for the bank, shall obtain possession of the securities aforesaid, and shall deliver, or cause to be delivered, the same to the bank, as security for this loan, before the close of business on this day, unless in the meantime the amount of this loan shall have been repaid to the bank. The undersigned may, however, before the close of business this day, sell or transfer, for cash or its equivalent, or pledge for money contemporaneously loaned, or exchanged for other securities, any or all of said certain securities, but the proceeds of such sales, transfers, and pledges shall be received by the undersigned as trustee for the bank, and shall be delivered by the undersigned to the bank before the close of business this day, where they shall be credited in payment pro tanto of said loan, and the securities received in exchange shall be in all respects charged with the same trust, and subject to the same rights of the bank to possession, and otherwise, as herein provided in respect of the certain securities so exchanged.

"The undersigned, as further security to the bank, hereby assigns to the bank, its successor and assigns, all of the right, title, and interest of the undersigned to and in the certain securities hereinabove referred to, and to and in any and all claims of the undersigned against third parties now existing and that may be created this day for the purchase price, or any present unpaid balance thereof, of any of said certain securities sold or that may be sold by the undersigned, and to and in all claims of the undersigned against customers of the undersigned for the balance due or to become due this day of the purchase price of any of said certain securities delivered or deliverable to such customers.

"Nothing herein contained is intended to lessen the liability of the undersigned to the bank arising from the making of said loan; nor to impair the effect of any general collateral agreement given by the undersigned to the bank; nor to confer upon the undersigned any authority to create any liability on the part of the bank. Clarence C. Perpall & Co."

The District Judge found that the moneys and securities in the receiver's possession claimed by the bank were securities or proceeds of securities bought by Perpall with the moneys loaned him by it, held by him in trust for it, and should therefore be delivered by the receiver to it. He said:

"I do not think that the negligence of the bankrupt fully to segregate the money received from the Continental Bank can be imputed to the bank. Judge Learned Hand, in the case of Hotchkiss v. National City Bank (D. C.) 200 Fed. 294, said: 'Had they said that they meant to create a trust such a trust would arise.' This opinion, while a dictum, was reiterated by the Circuit Court of Appeals, and no criticism that I can find is made of it by Justice Holmes. He and the Supreme Court simply agreed that in the case under consideration the parties did not mean to create a trust. In that case there was no language creating a trust or imposing a trust obligation, and the parties seeking to prove that relation substantially relied on a custom which the court thought was not established. * * * There was turned over to the

receiver on July 1st or July 2d a mixed fund of securities and certified checks representing the proceeds of a sale of securities purchased with moneys withdrawn from the account amounting to $75,183.23. Apparently there were at all times stocks, certified checks, or cash equal to the sum of $50,000, by which the assets of the bankrupt were augmented. I can see no substantial difference between this case and that of Importers' & Traders' National Bank v. William H. Peters, 123 N. Y. 272, 25 N. E. 319, and that of Brennan v. Tillinghast, 201 Fed. 609, 120 C. C. A. 37. As long as there was at all times after the deposit of the $50,000 cash on hand, or securities purchased. therewith or released thereby, I can see no reason why the well-established presumption that Perpall regarded the law and did not dissipate the trust fund for improper purposes should not entitle the bank to an equitable lien upon the property in the hands of the receiver to the extent of the so-called 'day loan.' "

We read the contract as a loan of money from the bank to Perpall, with an agreement by Perpall to give security for repayment. It recites that. the bank has made a loan of $50,000 to Perpall, to be credited to his account and to be repaid the same day. There is no ground for saying that the loan created a trust fund. If Perpall's account had been attached by a creditor, nothing contained in this agreement could have saved the money as being money of the bank. It was the broker's money absolutely, and all that he undertook to do in respect of it was to give the bank security for repayment. The only reference to anything in the nature of a trust is his covenant to get possession of securities bought or released by him with the proceeds of the loan, and as trustee for the bank deliver them to it on the same day, unless the loan in the meantime had been repaid. This is an agreement to give a pledge. Then follows as further security for the loan an assignment of all of Perpall's right, title, and interest in the securities, and his claim against purchasers thereof, which is an agreement to give a mortgage.

[2] Since the decision in Hotchkiss v. National City Bank, 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 115, and no doubt as a result of it, the Lien Law of the state of New York (Consol. Laws, c. 33) has been amended by chapter 348, p. 942, Laws 1916. It is entitled "An act to amend the Lien Law in relation to mortgaging or pledging stocks and bonds as security for a loan," and reads:

"Sec. 230. *Chattel Mortgages to be Filed.* Every mortgage or conveyance intended to operate as a mortgage of goods and chattels or of any canal boat, steam tug, scow or other craft, or the appurtenances thereto, navigating the canals of the state, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, is absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, is filed as directed in this article. This article shall not apply to agreements creating liens upon merchandise or the proceeds thereof for. the purpose of securing the repayment of loans or advances made or to be made upon the security of said merchandise and the payment of commissions or other charges provided for by such agreement, where the conditions specified in section forty-five of the personal property law are complied with,[1] *nor shall this article apply to the mortgage or pledge of or lien upon stocks or bonds mortgaged or pledged to secure payment of a loan, which stocks or bonds, by the terms of a written instrument creating such mortgage, pledge or lien and setting forth the conditions of such loan, are to*

---

[1] Remainder of section new.

be delivered to the lender on the day such loan is made, and every such mortgage, pledge or lien, of such securities, shall be valid as against creditors of such mortgagor or pledgor, provided, however, that if such securities are not delivered to the pledgee or mortgagee on the day such loan is made, the mortgage, lien or pledge therein intended to be created shall be absolutely void and of no effect as against the creditors of such mortgagor, pledgor or lienor unless such instrument, or a true copy thereof, is filed as directed in this article, on the day following the making of such loan, and provided also that every such mortgage, pledge or lien shall be absolutely void as against purchasers, pledgees or mortgagees in good faith of such stocks or bonds provided such stocks or bonds are delivered to such purchaser, pledgee or mortgagee at the time of such purchase, pledge or mortgage."

Obviously with a view of covering brokers' day loans, the act gives effect to pledges and mortgages of stock, etc., for one day, notwithstanding that possession of the securities has not been given. It plainly contemplates a mortgage or pledge of specific securities; otherwise the requirement that if the loan be not paid the day it is made the agreement must be filed the next day would be useless as notice. The only specific information the agreement in this case would have given, if filed, would have been that the bank had loaned $50,000 to Perpall. As the agreement was not filed the next day, July 2, 1918, it became void as a mortgage or pledge by the law of New York, and invalid under section 67a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 564 [Comp. St. § 965]) for want of recording.

Were this not so, still Perpall, not having perfected his covenants by delivery of possession of the securities or by executing a mortgage, equity would not do so at the expense of general creditors in a bankruptcy proceeding.

The order is reversed.