IRVING TRUST CO. v. BANK OF AMERICA
NAT. ASS'N.

No. 94.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1934.

888

Morris, Plante & Saxe, of New York City (David S. Elkins and Robert C. Beatty, both of New York City, of counsel), for plaintiff-appellant.

Zalkin & Cohen, of New York City (Nathan Coplan and Harry Zalkin, both of New York City, of counsel), for defendant-appellant.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

Broomhall, Killough & Co., Inc., a dealer in stocks and bonds, was adjudicated bankrupt upon its voluntary petition filed July 3, 1930. On the afternoon of the preceding day the bankrupt, being then insolvent, made a deposit in its account with the defendant bank, and $82,156.58 thereof was applied to the payment of a "day loan" which the bank had granted earlier in the day. The bank received the deposit under circumstances which gave it reasonable cause to believe that a preference would be effected thereby, unless as a matter of law the day loan agreement justified retention of the deposit. So the jury found by special verdict, and the evidence would have justified no other conclusion. The day loan agreement, which is identical in form with that printed in Re Perpall, 261 F. 858 (C. C. A. 2), and need not be set out in extenso here, purported to give the bank a lien upon securities to be obtained by the bankrupt with the avails of the day loan, permitted such securities to be disposed of by the bankrupt during the day, and required the proceeds of such of them as were disposed of to be delivered to the bank to be applied toward payment of the day loan. The challenged deposit included checks aggregating $60,732 which were identified as the actual proceeds of part of the securities obtained with the avails of the day loan. As to this sum the District Court held that the bank received no voidable preference; it granted re-covery in the amount of $21,424.58, the remainder of the amount in litigation. The plaintiff has appealed from the denial of full recovery; the defendant from the allowance of any recovery.

In National City Bank v. Hotchkiss, 231 U. S. 50, 34 S. Ct. 20, 58 L. Ed. 115, and Mechanics', etc., Bank v. Ernst, 231 U. S. 60, 34 S. Ct. 22, 58 L. Ed. 121, it was held that a day loan agreement which contained no stipulation limiting the broker's use of the borrowed money created no valid lien upon securities actually obtained with the avails of the loan. Doubtless as a result of these decisions, section 230 of the Lien Law of New York (Consol. Laws, c. 33) was amended in 1916. Laws N. Y. 1916, c. 348. See In re Perpall, 261 F. 858, 861 (C. C. A. 2). The amendment declares, in substance, that a lender may obtain a valid mortgage or pledge of or lien upon stocks and bonds for one day without the immediate delivery of possession and without the recording of the instrument which creates the lien; but if the securities are not delivered during the day of the loan, then the mortgage, pledge, or lien shall be void as to creditors of the borrower unless the instrument, or a copy thereof, is filed for record on the next day. The defendant's day loan agreement was filed on the day following the making of the loan.

The plaintiff contends that the agreement created no valid mortgage, pledge, or lien, within the protection of section 230 as amended, because it fails to identify sufficiently the securities upon which the bank was to have a lien. We think the contention is without merit. The agreement specifies that the borrowed money is to be used (1) to obtain possession of securities which the borrower has contracted to purchase, or (2) to release securities held as collateral for other loans of the borrower; and the securities so purchased or released are to be held in trust as security, or, if disposed of, their proceeds are to be paid to the bank during the day. This was not an agreement to impose a lien upon a part to be selected in the future out of the general mass of the promisor's property. It was an agreement for a lien on securities specifically designated, namely, those of which he should obtain possession by use of the borrowed money, and the lien was to arise the instant he obtained them. The specific securities so obtained were capable of positive identification through the bankrupt's check book and stock blotters, and were so identified. A contract to mortgage, pledge, or create a lien upon specific property is valid be-

tween the parties and as against simple creditors and purchasers with notice, and will be enforced in equity even though insufficient to create a legal lien. McCaffrey v. Woodin, 65 N. Y. 459, 22 Am. Rep. 644; Wisner v. Ocumpaugh, 71 N. Y. 113; Coats v. Donnell, 94 N. Y. 168; Kribbs v. Alford, 120 N. Y. 519, 24 N. E. 811. See, also, Guaranty Trust Co. v. N. Y. & Q. C. Ry. Co., 253 N. Y. 190, 199, 170 N. E. 887; Ingersoll v. Coram, 211 U. S. 335, 368, 29 S. Ct. 92, 53 L. Ed. 208; Barnes v. Alexander, 232 U. S. 117, 121, 34 S. Ct. 276, 58 L. Ed. 530. It is true that by the law of New York such an agreement could not be enforced as against an attaching or execution creditor, Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635, nor as against a trustee in bankruptcy who, it was held, takes the position of an attachment or execution creditor, although he represents general creditors only. Zartman v. First National Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083; Titusville Iron Co. v. City of New York, 207 N. Y. 203, 100 N. E. 806; cf. Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577. But the 1916 amendment to section 230 of the Lien Law expressly validates as against creditors liens upon securities agreed to be pledged for a day loan. The use of the word "creditors" without any qualification or explanation in this statute includes, of course, execution or attachment creditors, and it follows that such a lien would also be valid as against the lienor's trustee in bankruptcy. Consequently, we hold that the defendant had a valid lien upon the securities obtained by the bankrupt by the use of the day loan. In so far as In re Perpall, 261 F. 858, 861 (C. C. A. 2), suggests that the agreement does not sufficiently specify the securities subject to the mortgage, pledge, or lien we cannot approve it. Such remarks were clearly obiter, for there neither was possession of the pledged securities delivered during the day, nor was the loan paid, nor was the agreement filed the day following.

■■ One further argument of the plaintiff must be noticed in connection with its contention that the specific stocks covered by the day loan agreement could not be identified. On July 2d, before the day loan was made, the bankrupt had a $15,000 balance on deposit with the defendant bank. It is urged that this fact makes it impossible to determine which stocks were purchased with the $15,000 balance and which with the avails of the day loan. The answer is to be found in the practice of the parties. Each day a balance of $15,000 was left on deposit, apparently to serve as a 10 per cent. "cushion" for the new loan to be applied for the next day. It was the "regular" and "customary" balance as Taylor, the bankrupt's check clerk, testified. The checks which he deposited were figured with reference to checks withdrawn so as to leave a $15,000 deposit after payment of the day loan. Under this arrangement we think that the balance must be treated as a separate fund, set apart at the outset and never used, or at least not used until after the money derived from the day loan was exhausted. An informal business transaction should be construed as adopting whatever form consistent with the facts is most fitted to reach the result desired by the parties. Barnes v. Alexander, 232 U. S. 117, 120, 34 S. Ct. 276, 58 L. Ed. 530; Sexton v. Kessler & Co., 225 U. S. 90, 97, 32 S. Ct. 657, 56 L. Ed. 995. They clearly desired that the money advanced on July 2d should be secured by stocks obtained by its use. Only $97,000 of the total loan of $150,000 was withdrawn, so that all of the withdrawals were avails of the day loan, and the $15,000 balance from the previous loan remained untouched.

■■ As already mentioned, the agreement permitted the borrower to dispose of securities upon which the bank was given a lien, and to substitute the proceeds thereof. This provision presents no difficulties. The reservation of a power of sale by the lienor may render the lien fraudulent and void as to creditors if there is no obligation to account for the proceeds. Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885; Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991. It does not when there is. Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; In re Bernard & Katz, 38 F.(2d) 40, 44 (C. C. A. 2); Brackett v. Harvey, 91 N. Y. 214. Since delivery of the securities themselves would not have been a preferential transfer to the lienor, the delivery of their proceeds, pursuant to the agreement, could not be. Sexton v. Kessler & Co., 225 U. S. 90, 97, 32 S. Ct. 657, 56 L. Ed. 995; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981. Consequently, as to checks aggregating $60,732, which were identified as proceeds of the bankrupt's disposal of shares obtained by use of the day loan, the bank received no preference, its knowledge of facts putting it on notice of the bankrupt's insolvency was immaterial, and the decree was correct in denying recovery to the plaintiff.

■ The amount of $21,424.58, for which recovery was allowed, must be separated into

two items: $17,530 and $3,894.58. The former sum the bank claims the right to retain because at the time of the deposit the bankrupt held securities of that value purchased with the avails of the day loan. It is apparent, from what we have already said, that the bank had a valid lien upon these securities and was entitled to delivery of possession during the day. Although delivery was not made, the validity of the lien upon them was preserved by filing the agreement on the following day. Therefore there was no depletion of the bankrupt's estate in paying the bank $17,530, and thereby extinguishing its lien for a like amount on property in the bankrupt's possession, because this released to the bankrupt's estate an equivalent value. Since there was no depletion of the estate, there was no preference. Marsh v. Leseman, 242 F. 484 (C. C. A. 2); Coppard v. Martin, 15 F.(2d) 743, 745 (C. C. A. 5); Ill. Parlor Frame Co. v. Goldman, 257 F. 300, 301 (C. C. A. 7). The decree was erroneous in awarding recovery of this item.

As to the remaining item, $3,894.58, there was a voidable preference. Checks aggregating this amount were not proceeds of securities subject to the bank's lien, nor did they extinguish a claim for a like amount as to which the bank had a lien upon securities then in possession of the bankrupt. The bank's brief asserts that the bankrupt then had possession of an equivalent amount of other checks representing proceeds of securities obtained through the day loan, but the record does not bear this out. Exhibit D shows that these other checks were deposited by the bankrupt in other banks. Taylor testified that no deposits were made after about 2:15 p. m., except the deposit in the defendant Bank of America. This is corroborated by much other testimony to the effect that the bankrupt had suspended operations before the defendant's officers, demanded a deposit. There is nothing to indicate that the defendant had a lien or claim against any specific property of the bankrupt which was released by the payment to defendant of this sum of $3,894.58. As to this amount it was in the position of a general unsecured creditor; and it had no right of set-off because the deposit was received after it had reason to know of the bankrupt's insolvency and after it had forbidden withdrawals from, or certifications against, the bankrupt's account. Mechanics' & Metals' Nat. Bank of City of New York v. Ernst, 231 U. S. 60, 34 S. Ct. 22, 58 L. Ed. 121.

The defendant contends that retention of this sum may be justified on the ground that the loan of July 2nd was rescindable because obtained by fraud in that the bankrupt did not disclose that it was insolvent when the loan was applied for. By special verdict the jury found that there were fraudulent misrepresentations. This finding the District Court set aside as unsupported by the evidence. The correctness of that conclusion we need not consider. So far as the bank can trace its loan into specific securities, or their proceeds, it does not need to rely upon fraud; so far as it cannot trace its fund, fraud will not aid it. Cunningham v. Brown, 265 U. S. 1, 44 S. Ct. 424, 68 L. Ed. 873. There is no proof of tracing as to the sum now under discussion.

The judgment must be reversed and the cause remanded, with directions to enter judgment for the plaintiff in the sum of $3,894.58, with interest from March 27, 1931. See United States v. Stamey, 48 F.(2d) 150, 152 (C. C. A. 9); Hoffman v. Am. Mills Co., 288 F. 768, 773 (C. C. A. 2). The defendant is awarded four-fifths of its costs on appeal.

Judgment reversed with directions.