### SAMMET v. MAYER.
### In re WYSER et al.
### No. 86.

Circuit Court of Appeals, Second Circuit.
Dec. 18, 1939.

338

Benjamin Siegel, of New York City (Benjamin Brownstein, of New York City, on the brief), for appellant.

Isadore B. Hurwitz, of New York City (Goldman, Malter & Goldman and Harry Malter, all of New York City, on the brief), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The bankrupts were the sole partners in a brokerage firm known as Wyser & Diner. On October 27, 1937, they borrowed $4,000 from Kurt F. Mayer, the claimant-appellee herein, and gave him their promissory note wherein it was recited that certain specified stocks were collateral security for the note. Mayer was about to depart, and in a short time did depart, on a protracted trip to the Orient. The stock certificates were not placed in the hands of the claimant, but were immediately segregated by the bankrupts and put in an envelope, on the outside of which was written the name of Kurt F. Mayer. The envelope was placed in the safe deposit vault of the bankrupts, and the transaction was noted on their books. Some of the securities belonged to the bankrupts, while others were the property of customers who had purchased them on margin. It was agreed between claimant and the bankrupts that they might substitute other securities for those called for by customers.

At three times thereafter the bankrupts withdrew securities from the envelope; on the first occasion they substituted others; on the remaining ones they made no replacements. Upon the occurrence of bankruptcy the market value of the securities was no more than $1,100, although the debt was then in excess of $3,500. When the bankruptcy receiver took over custody of the assets, he found the envelope containing the securities in the bankrupts' vault. Mayer demanded the stocks and bonds and filed a claim to recover them. The referee denied the claim, but the District Court sustained Mayer's petition to review, and the bankruptcy trustee appeals.

The referee based his decision on the conclusion that, because possession of the securities was not delivered, the transaction was an imperfect pledge, invalid against the trustee in bankruptcy. The District Court also concluded that, for want of delivery, the transaction did not constitute a valid pledge, but held that the arrangement could be viewed as a chattel mortgage and as valid without being filed for record. Since no instrument embodying the transaction had been filed, the court's decision required that it hold inapplicable § 230, N.Y.Lien Law (Consol.Laws, c. 33), prescribing the conditions under which chattel mortgages and certain liens on stocks and bonds must be filed to be valid against creditors. The

court analyzed this statute carefully and came to the conclusion that it did not apply to the lien created by the instant arrangement. The claimant now relies on this finding to support his demand for the securities; he also urges that the transaction amounted to a valid pledge; and as further alternatives he claims either an equitable lien or a declaration of trust in his favor.

■ Under the decisions the transaction cannot be upheld as a valid pledge in the absence of delivery of possession of the property to the pledgee. McCoy v. American Express Co., 253 N.Y. 477, 171 N.E. 749; Casey v. Cavaroc, 96 U.S. 467, 24 L. Ed. 779; Goldstein v. Rusch, 2 Cir., 56 F.2d 10, certiorari denied 287 U.S. 604, 53 S.Ct. 9, 77 L.Ed. 526. Appellee asserts that constructive possession may be relied upon as a substitute, but we know of no decision that would dignify the arrangement adopted in the instant case by calling it a delivery of constructive possession. Some symbolic or "constructive" act may be permissible when the property is in the hands of third parties or by its nature is not conveniently susceptible of manual delivery. Here not only did the securities fail to reach the pledgee; they never departed from the possession and dominion of the pledgor. It is doubtful whether the mode of delivery here selected would satisfy (as against creditors) the requirements for a declaration of trust. Compare In re A. E. Fountain, Inc., 2 Cir., 282 F. 816, 25 A.L.R. 319. Much less, then, is it able to satisfy the requirements for a valid pledge. Restatement of Security, T. D. No. 1, §§ 1, 5-8, 10.

■ But since the parties acted in apparent good faith, we should not hold ourselves bound to test the validity of this transaction by the literal and technical rules of pledge alone. In the similar case of Sexton v. Kessler & Co., 225 U.S. 90, 32 S. Ct. 657, 56 L.Ed. 995, Mr. Justice Holmes declared:

"So far as the interpretation of the transaction is concerned, it seems to us that there is only one fair way to deal with it. The parties were business men, acting without lawyers, and in good faith attempting to create a present security out of specified bonds and stocks. Their conduct should be construed as adopting whatever method consistent with the facts and with the rights reserved is most fitted to accomplish the result. If an express declaration of an equitable lien, or, again, a statement that the New York firm constituted itself the servant of the English company to maintain possession for the latter, or that it held upon certain trusts, or that a mortgage was intended, or any other form of words, would effect what the parties meant, we may assume that it was within the import of what was done, written, and said. So the question is whether anything in the situation of fact or the rights reserved prevents the intended creation of a right in rem, or, at least, one that is to be preferred to the claim of the trustee." 225 U. S. at page 97, 32 S.Ct. at page 658, 56 L.Ed. 995.

■ Conceivably, therefore, the arrangement at bar might be viewed as a pledge, a chattel mortgage, a declaration of trust, or as the mysterious equitable lien[1] to which Mr. Justice Holmes refers. But

[1] Said by Professor McLaughlin (in urging amendments to the Bankruptcy Act) to be "neither equitable nor a lien." 40 Harv.L.Rev. 341, 389. See also Professor Glenn in 25 Va.L.Rev. 422, 423. The critical articles have been many. Cf., e. g., 37 Col.L.Rev. 621; 34 Yale L. J. 891; Professor Britten in 8 N.C.L. Rev. 388. Such a lien by definition should be invalid at law against intermediate attaching creditors. Rochester Distilling Co. v. Rasey, 142 N.Y. 570, 37 N.E. 632, 40 Am.St.Rep. 635. But in Schoenherr v. Van Meter, 215 N.Y. 548, 109 N.E. 625, an attorney's claim was upheld as an equitable lien against a bankruptcy trustee, although the 1910 amendments had vested the trustee with the rights of an attaching creditor. Bankruptcy Act, § 47, sub. (a)(2), 11 U. S.C.A. § 75, sub. a(2) [now § 70, sub. c, 11 U.S.C.A. § 110, sub. c]. Possibly therefore an attaching creditor could not prevail against an equitable lien in New York. Williams v. Ingersoll, 89 N.Y. 508, 523; but cf. Rochester Distilling Co. v. Rasey, supra. The new Chandler Act, 52 Stat. 840, effective after the date of the transaction here, has been thought to invalidate such a lien in provisions intended to strike down "secret liens" [H.R.Rep. No. 1409, 75th Cong., 1st Sess. (1937) p. 30]; for by § 60, sub. a, and § 67, sub. d (5), 11 U.S.C.A. § 96, sub. a, and § 107, sub. d(5), a transfer is deemed made only when so far perfected that no bona fide purchaser or creditor could thereafter have acquired any rights "superior" to the transferee, and when not otherwise perfected is deemed made just before the filing of the petition. Cf. McLaughlin, 4 U. of Chi.L.Rev. 369, 393; Glenn, supra, also in 25 Va.L.Rev. 885; 26 Va.L.Rev. 219; Weinstein, Bankruptcy Act of 1938, p. 120.

whatever name is ultimately applied, we are of the opinion that the transaction is invalid against creditors, and hence against the trustee in bankruptcy, under Section 230 of the N. Y. Lien Law. Since that section speaks of "the mortgage or pledge of or lien upon stocks or bonds," we conclude that the statute, if applicable at all, includes mortgages, pledges, declarations of trust, and so-called equitable liens.

That statute, in its main enacting clause, has long provided:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels * * *, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, is absolutely void as against the creditors of the mortgagor, * * * unless the mortgage, or a true copy thereof, is filed as directed in this article."

In 1916, the statute was amended by the addition of the following sentence:

"This article shall not apply to agreements creating liens upon merchandise or the proceeds thereof for the purpose of securing the repayment of loans or advances made or to be made upon the security of said merchandise and the payment of commissions or other charges provided for by such agreement, where the conditions specified in section forty-five of the personal property law are complied with, nor shall this article apply to the mortgage or pledge of or lien upon stocks or bonds mortgaged or pledged to secure payment of a loan, which stocks or bonds, by the terms of a written instrument creating such mortgage, pledge or lien and setting forth the conditions of such loan, are to be delivered to the lender on the day such loan is made, and every such mortgage, pledge or lien, of such securities, shall be valid as against creditors of such mortgagor or pledgor, provided, however, that if such securities are not delivered to the pledgee or mortgagee on the day such loan is made, the mortgage, lien or pledge therein intended to be created shall be absolutely void and of no effect as against the creditors of such

mortgagor, pledgor or lienor unless such instrument, or a true copy thereof, is filed as directed in this article, on the day following the making of such loan, and provided also that every such mortgage, pledge or lien shall be absolutely void as against purchasers, pledgees or mortgagees in good faith of such stocks or bonds provided such stocks or bonds are delivered to such purchaser, pledgee or mortgagee at the time of such purchase, pledge or mortgage." Laws 1916, c. 348.

As pointed out by In re Perpall, 2 Cir., 261 F. 858, certiorari denied 251 U.S. 561, 40 S.Ct. 220, 64 L.Ed. 414, and Irving Trust Co. v. Bank of America Nat. Ass'n, 2 Cir., 68 F.2d 887, certiorari denied 292 U.S. 628, 54 S.Ct. 630, 78 L.Ed. 1482, a major purpose of the amendment was to remove all doubt as to the validity of brokers' day loans, which had been left somewhat clouded by the decisions in National City Bank v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 58 L. Ed. 115, and Mechanics' & Metals' Nat. Bank v. Ernst, 231 U.S. 60, 34 S.Ct. 22, 58 L.Ed. 121. Although the amendment starts out in the fashion of an excepting clause, Section 230 could not previously have applied to brokers' day loans unless stocks and bonds were included in the phrase "goods and chattels." In 1912, Sexton v. Kessler & Co., supra, in reliance upon earlier New York cases,[2] had held that stocks and bonds were not so included; it emphasized for its decision "the absence of any controlling statute to the contrary."[3] We need not reopen that question, for in our belief the 1916 amendments, considered by themselves, went so far as to invalidate all liens created by loans in which stocks and bonds are in some fashion put up as collateral, unless delivery is made within a day or the agreement is recorded on the day following. The amendment cannot be limited to the protection of brokers' day loans alone; even the first sentence of the amendment reaches much further than such loans by referring to "agreements creating liens upon merchandise or the proceeds thereof." By strictly confining the statute to day loans, we would be assuming the

---

[2] Niles v. Mathusa, 162 N.Y. 546, 57 N.E. 184; cf. Booth v. Kehoe, 71 N.Y. 341.

[3] In the Sexton case, the debtor did deliver the securities to his creditor shortly before the bankruptcy, a fact stressed in later cases. Burrowes v. Nimocks, 4 Cir., 35 F.2d 152 (opinion by Parker, C. J., Northcott, C. J., dissenting); Jordan

v. Greenwood, D.C.Me., 23 F.2d 506, affirmed 1 Cir., 34 F.2d 1021; MacDonald v. Ætna Indemnity Co., 90 Conn. 415, 97 A. 332; Union Trust Co. of Maryland v. Townshend, 4 Cir., 101 F.2d 903, criticized in 26 Va.L.Rev. 219. Compare also the views of the textwriters cited in note 1, supra.

ridiculous position that 24-hour loans, require recordation or delivery, while loans for 25 hours or more do not. The statute does declare that if "such securities" are not delivered on the day of the loan, "the mortgage, lien or pledge therein intended to be created shall be absolutely void" as against creditors in the absence of recordation. The fair meaning is that all intended mortgages, liens, or pledges of stocks or bonds not within the specific exception here stated are void as against creditors of the mortgagor, pledgor, or lienor in the absence of delivery of the property or recordation of the instrument.[4]

The courts of New York have not passed upon the meaning of this part of Section 230, and we are naturally reluctant to construe a state statute before the state court has had an opportunity to furnish us with an authoritative interpretation.[5] But this particular law has been on the books for twenty-three years, and it may be some time before a case presenting the same problem of construction will arise in the New York state courts. As the cases on this statute indicate, the administration of debtors' estates has been and for some time will continue to be mainly the concern of the federal judiciary. The meaning of this clause will be of increasing importance in bankruptcy, now that Section 60, sub. e, of the Chandler Act, 11 U.S.C.A. § 96 sub. e[6] affords a special type of liquidation for insolvent brokerage concerns. We feel therefore compelled to make the decision. We are fortified in the result by the fact that it follows the suggestion of Mr. Justice Brandeis in Benedict v. Ratner, 268 U. S. 353, 362, n. 15, 45 S.Ct. 566, 69 L.Ed. 991. See also Glenn on Fraudulent Conveyances, page 546.[7]

Since, therefore, the claimant had had no possession of the property, and since no instrument embodying the transaction had been filed as provided in N.Y.Lien Law, § 230, the trustee is entitled to retain the securities discovered in the bankrupts' vault.

Reversed.

---

[4] The court below relied on another amendment to the statute by Laws 1921, c. 419, which added another sentence to the effect that the article should not apply "to the mortgage or pledge of or lien upon stocks, bonds, debentures, notes or other evidences of indebtedness, or contracts or choses in action" to be transferred by a corporation to secure the payment of bonds or notes at a future date and on a release thereof by a trustee under a prior mortgage or instrument or pledge. The court said it was difficult to conceive that the legislature intended to make "choses in action," for example, subject to the provisions of this statute, as they were not before. In re Michigan Furniture Co., D.C.S.D.N.Y., 249 F. 978; In re Bernard & Katz, 2 Cir., 38 F.2d 40. Perhaps it may not be so difficult to reach this conclusion in view of what seems a decisive trend against "secret liens" (note 1, supra), but we may well leave the interpretation of this provision until the need for it arises. In any event it cannot limit the earlier amendment. A later amendment of the statutory wording, L.1937, c. 810, does not concern the present problem. Cf. Hanna in 31 Col.L.Rev. 617; and Hamilton in 26 Va.L.Rev. 168.

[5] The applicability of the statute to stocks and bonds was assumed in New York Trust Co. v. Island Oil & Transport Co., 2 Cir., 33 F.2d 104, 79 A.L.R. 1007; and cf. Hams v. Marshall, 2 Cir., 43 F.2d 703, certiorari denied 282 U.S. 882, 51 S.Ct. 85, 75 L.Ed. 778.

[6] Discussed in 39 Col.L.Rev. 485–496.

[7] If, as seems doubtful, the Uniform Trust Receipts Law, N.Y.Laws 1934, c. 574, Personal Property Law (Consol. Laws, c. 41) §§ 50–58l, applies, the result is unchanged. For by that act pledges of goods, documents or instruments (including stock certificates and bonds [§ 51, subd. 5(b), § 52]) not accompanied by delivery of possession, and where there is no filing under the special rules of the act or any applicable filing law, are valid for ten days only after "new value" has been given for them. § 53. The act is stated not to apply "to single transactions of legal or equitable pledge, not constituting a course of business," but this limiting provision is in turn limited to cases of entrustment by a natural person to a fiduciary handling investments or finances of the entruster. § 58-g. This confusing statement has led commentators to suggest a possible wide applicability of § 53 (important particularly for its validation of an otherwise ineffective pledge for ten days). Bogert, 3 U. of Chi.L.Rev. 26, 37, 38; Bacon, 5 Fordham L.Rev. 240, 253, 268, 269; 45 Yale L.J. 1272, 1282. Its draftsmen proposed § 58-g, however, as not disturbing existing law on "constructive delivery" of "non-professional" pledges of security papers in circumstances seemingly not unlike those at bar. Handbook, Nat'l Conf. Com'rs on Uniform State Laws (1930) 289, 290 and (1933) 250.