FLINT ROAD CART COMPANY, Respondent, v. LON V. STEPHENS, Receiver of the FIFTH NATIONAL BANK, Appellant.

| 32 | 341 |
|---|---|
| 86 | 183 |
| 158s | 199 |

St. Louis Court of Appeals, November 13, 1888.

1. National Bank: INSOLVENT: PREFERRED CLAIM.  Where a sum of money was placed in the hands of the cashier of an insolvent national bank to indemnify him as surety on an attachment bond in behalf of the plaintiff, and the cashier mingled the money with the bank's funds, so that it went along with the assets into the hands of the receiver, such sum of money is a trust fund separate from the general assets and liabilities of the bank, and upon discharge of the surety's obligation, the plaintiff is entitled to recover it from the receiver, without any reference to his administration upon the claims of the bank's creditors.

2. National Bank: INSOLVENT: TRUST FUND: JURISDICTION.  Nothing contained in the national banking law deprives a state court of jurisdiction to determine and segregate a trust fund held by the receiver of an insolvent national bank, and to render judgment for a proper disposal of the fund in accordance with the trust.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

AFFIRMED.

*Draffen & Williams* and *D. W. Shackleford*, for the appellant.

The "national bank act," in its provisions for winding up the affairs of insolvent banks, requires that the assets shall be ratably distributed among the creditors, and that no creditor shall obtain any preference over others. R. S. U. S. secs. 5236, 5242; *Irons v. Bank*, 6 Bissel, 301, 306; *Bank v. Price*, 22 Fed. Rep. 697. The plaintiff was only a creditor of the bank. Its funds were not placed on special deposit, nor is there any special equity in its claim to be treated as a preferred creditor. None of the plaintiff's money came into the receiver's hands. *In re Cavin v. Gleason*, 105 N. Y. 256. The proceeding against the receiver is improper. The statute points out his duty. He is required "to pay over all money collected to the treasurer of the United States, subject to the order of the comptroller." R. S. U. S. sec. 5234. The comptroller makes distribution thereof. The receiver has no control over the funds. His duty is marked out by the statute. If plaintiff is not satisfied with the distribution of the assets, his remedy is by proceedings against the comptroller. *While v. Knox*, 111 U. S. 784.

*Mills & Flitcraft*, for the respondent.

The deposit was a special deposit, and the fund a trust fund, and the respondent is not a general creditor of the bank, but entitled either to a return of the specific deposit or the equivalent. We respectfully submit that the reasoning of our supreme court in the case of *Stoller v. Coats*, 88 Mo. 51, and *Harrison v. Smith*, 83 Mo. 210, settles the law in favor of the respondent in this case. The conversion of the money does not change the character of the deposit or increase the rights of the ordinary creditors. The bank held the fund as a trustee, and the receiver is bound by the original trust. The national banking law applies to the distribution of

assets belonging to the bank, and to which it had exclusive right and control.   The funds of third parties are not to be distributed *pro rata* among the creditors of the bank.   Such funds are not to be distributed at all. Why should the receiver be able to extinguish the rights of the true owner?  The whole fund is to be treated as a trust fund until the beneficiary is made whole.   *Frith v. Cortland*, 2 Hen. & M. 417 ;   *Bank v. King*, 57 Pa. St. 202 ;  *Knatchbull v. Hallett*, 13 Ch. D. 696 ;  *Pennell v. Deffen*, 4 DeG. M. & G. 372 ;  *Tuttle v. Frelinghuysen*, 38 N. J. Eq. 12.   This court is justified in establishing respondent's claim as a demand to be paid in full, notwithstanding the fact that the receiver acts under the supervision of the comptroller of the currency.   *Bank v. Bank*, 14 Wall. 383.   The act of congress of March 3, 1887, amending the act of March 3, 1875, provides in section 3, that every receiver, or manager of any property, appointed by any court of the United States, may be sued in respect to any act or transaction of his, in carrying on the business connected with such property, without the previous leave of the court, in which said receiver or manager was appointed, but such suit shall be subject to the general equity jurisdiction of the court in which said receiver or manager was appointed,   so far as the same shall be necessary to the ends of justice.

PEERS, J., delivered the opinion of the court.

This is a suit by plaintiff to recover three hundred and fifty dollars deposited in the Fifth National Bank, and to have the same declared a preferred claim and entitled to be paid out of the assets before the payment of general creditors.   The pleadings show that the bank was duly organized under the "national bank act," and that in November, 1887, it became insolvent, suspended business and the defendant Stephens was appointed receiver thereof and duly entered upon his duties.

The case was submitted to the court upon the following agreed statement of facts :

"That on or about the nineteenth day of July, 1887, the plaintiff brought a certain suit by attachment in the

court of Patrick Kane, a justice of the peace in St. Louis, Missouri, against one W. J. Russell, and that in that proceeding it became necessary to furnish security residing in the city of St. Louis, and to accomplish that purpose plaintiff deposited in the Citizens' National Bank of Flint, Michigan, the sum of three hundred and fifty dollars; that the said Citizens' National Bank, acting for said plaintiff and at its request, delivered to the Fifth National Bank of St. Louis, the said sum of three hundred and fifty dollars, and requested one C. C. Crecelius, cashier of said Fifth National Bank, to become surety in said cause brought against said Russell. 'Flint, Mich., July 19th, 1887. C. C. Crecelius, St. Louis, Mo. Will you do me the favor to become surety in a case, The Flint Road Cart Co. *vs.* W. J. Russell, the bond not to exceed $350.00. To secure you I herewith enclose you my draft 99854, on Chase Nat. Bank, New York, for $350. R. G. Dunn & Co. atty. will call on you. By doing this you will confer a favor that will be fully appreciated by yours very truly, H. C. Von-Deusan, cashier.'

"That said sum of three hundred and fifty dollars was deposited with the said Fifth National Bank to indemnify said Crecelius as surety on said bond; that said bond was given on the nineteenth day of July, 1887, by other parties and that the deposit did not arrive in the city of St. Louis until the twenty-first day of July, 1887; that upon the receipt of said money by said Fifth National Bank of St. Louis, the said Fifth National Bank opened an account with the said Citizens' National Bank and credited said Citizens' National Bank of Flint, Michigan, with the said three hundred and fifty dollars and by its cashier transmitted the following letter to said Citizens' National Bank: 'St. Louis, July 20th, 1887. Citizens' National Bank, Flint, Michigan. Your favor of July 19th at hand. We credit $350 to your account, subject to the bond which we will furnish. Very truly, C. C. Crecelius.'

"The Citizens' National Bank was not a regular correspondent of the Fifth National Bank, the three

hundred and fifty dollars deposit being the only trans-action had with it. That said money was immediately mingled with the other funds of the bank, and by it paid out in the usual course of its business, and that long prior to the suspension of said bank the entire amount of said three hundred and fifty dollars had been paid out, as the funds so sent were not kept separate in any way; that said bank is insolvent and there is no certainty that said Stephens, as receiver, will be able from the assets in his hands to pay all the claims against said bank in full; that said receiver has come into pos-session of assets of said bank to an amount in excess of five hundred thousand dollars; that said Stephens refuses to pay said claim in full, and is proceeding to distribute the funds of said Fifth National Bank; that neither said Crecelius nor said Fifth National Bank fur-nished the security hereinbefore mentioned ; that neither said Fifth National Bank nor said C. C. Crecelius are now, nor in any contingency can become, liable for any sum on account of said request of the Citizens' National Bank, or of plaintiff herein ; that said attachment suit resulted in a judgment in favor of plaintiff, sustaining the attachment and for the recovery on the cause of action sued on, and that said judgment was not appealed from, and the time for appeal has long since expired. Mills & Flitcraft, Atty's for Pl'ff. Draffen & Williams, and D. W. Shackleford, Atty's for Def't.

"In case the court should be of the opinion that the fund in question is.not a trust fund, and entitled to priority of payment as a preferred claim, judgment may be entered as a general claim against the assets of the bank without prejudice, subject to the right of either party to appeal from the decision of the court. Mills & Flitcraft, for Pl'ff. D. W. Shackleford, Att'y for Def't."

The plaintiff insists that this was a special deposit and the fund a trust fund ; that they are not general creditors of the bank, but entitled either to a return of the specific deposit or the equivalent. On the other hand the defendant contends that the plaintiff is only a

creditor of the bank, that the funds were not placed on special deposit, and that there is no special equity in its claim to entitle it to be treated as a preferred creditor. If the position of the defendant is correct then there can be no recovery in the face of the provisions of the "national bank act," for if he is a general creditor then he must share ratably with all the other creditors in the general assets of the bank, and can have no preference. We so held in *Stephens, receiver, v. Schuchmann, ante,* p. 333, and we consider it the well-settled law. We are not favorably impressed with this view as applicable to the transactions contained in the record before us. From the agreed statement it is plain to our minds that the deposit was never made for the purpose of indemnifying the Fifth National Bank, but to save harmless Crecelius, who is requested to become security on the bond. The bank is not requested to assume any liability, nor is Crecelius, as cashier thereof, so requested. The plaintiff being a non-resident and being required under our statute to furnish bond before the institution of an attachment proceeding, makes a personal request of Crecelius to become bondsman, and indemnifies him by remitting a draft for three hundred and fifty dollars, and this draft is deposited with the Fifth National Bank and mingled with its assets. The draft was not payable to the Fifth National Bank, nor did the bank furnish the bond ; neither was there any occasion for opening an account between one bank and the other ; in fact this was the only business transaction ever had between the two banks. It would be very strange, in view of these facts, if the Fifth National Bank should be allowed to appropriate to the payment of its general creditors, money coming into its hands in this manner. This money was placed there in trust for a specified purpose, when the trust was ended the money must be returned, and the fact of its having been mingled with the assets of the bank and paid out over its counter does not affect it, for since the case of *Harrison v. Smith,* 83 Mo. 210, there has been no difficulty in following a trust fund, although the actual money deposited has been paid out

in the regular course of business.   In the case referred to, in an opinion by NORTON, J., the right of the *cestui que trust* to follow the trust fund when it has been mingled with the private funds of the trustee is elaborately discussed, and the doctrine distinctly announced "that when the trustee mixes the trust money with his own so that it could not be distinguished what particular part is trust money and what part is private money, equity will follow .the money by taking out the amount due the *cestui que trust*, and the doctrine that you cannot follow trust money mixed with other money in an indistinguishable mass, because of its having no 'earmark' must be taken as subject to the application of the above rule."   The same subject has been recently gone over by the supreme court of the United States in *National Bank v. Ins. Co.*, 104 U. S. 54, where it is held that so long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust, and if a man mixes trust funds with his own money the whole will be treated as trust property except so far as he may be able to distinguish what is his."   See also *Pomeroy v. Benton*, 57 Mo. 531 ; 1 Story Eq. sec. 468.

It being established then that such a fund may be followed, and that if the specific fund cannot be separated from the general mass of funds in the hands of the trustee, that there may be taken from the general funds an amount sufficient to replace the particular fund which has been appropriated, we hold that the payment of this money out over its counter in the ordinary course of business was a breach of its agreement and an improper disposition of trust funds held for a particular purpose.   The plaintiff claims no "preference" over other creditors by reason of having this money returned to him.   It was a deposit for a special purpose and we cannot permit the receiver to retain against the true owner special deposits received by the bankrupt in a fiduciary capacity.   We take no issue with the case of *Irons v. Bank*, 6 Biss. 301, cited by the defendant ; in fact we agree with that authority in holding

that officers of an insolvent national bank cannot make preferential payments; but that does not militate against the position that a trust fund received in such a manner that the ordinary relation of debtor and creditor is not established, should properly be returned intact, either by the insolvent bank or by the receiver subsequently appointed.

The bank held this fund under the agreed case as trustee, and the receiver is bound by the original trust. The funds of third parties are not to be distributed ratably among the creditors of an insolvent bank; such funds are not to be distributed at all. The whole fund is to be treated as a trust fund until the beneficiary is made whole. *Pennell v. Deffell*, 4 DeG., M. & G. 372; *Frith v. Cartland*, 2 Hem. & M. 417. Trusts are enforced not only against those persons who are possessed of the trust property rightfully as trustees, but also against all persons who come into the possession of the property bound by the trust with notice of the trust. 2 Spencer Eq. Jur. 194. The holder of trust property becomes a trustee of it as soon as he has notice that it is trust property. Not only can the trust property be followed in the hands of third persons, but the proceeds may be followed as long as they can be traced and identified. Perry on Trusts, 835; *Tuttle v. Frelinghuysen*, 38 N. J. Eq. 12. No matter in whose name the legal right stands. *Bank v. King*, 57 Pa. St. 202.

We therefore conclude that this fund is a trust fund, and is a demand to be paid in full by the receiver. It was placed in the bank for a special purpose, and as a special deposit belonging to the plaintiff and not a part of the general assets of the bank, and such a claim as should be paid in full for the reason that the special fund deposited cannot now be returned to the plaintiff.

We are met by the receiver with the objection that he is "required to pay over all moneys collected to the treasurer of the United States, subject to the order of the comptroller of the currency," and that if the plaintiff is not satisfied with the distribution of the assets,

his remedy is by proceedings against the comptroller. A sufficient answer to this is found in the case of *Trust National Bank v. Bank*, 14 Wall. 383, in which Justice CLIFFORD says: "Proceedings to enjoin the comptroller of the currency under that act must, it is true, be instituted and prosecuted in a circuit, district or territorial court of the United States; but the act allows creditors to sue in the proper state courts in all suits, actions and proceedings against the association, as specially provided in the fifty-seventh section of the act."

Again it is stated: "Claims proved to the satisfaction of the comptroller are to be included in the list, and he is also to include in the list all claims adjudicated in a court of competent jurisdiction, which shows conclusively that claims disallowed by the comptroller may be prosecuted in a court having jurisdiction in such cases."

Again, in considering the powers of the receiver to be sued, it is stated: "Express power to sue and be sued, complain and defend in any court of law and equity is conferred on such associations by the eighth section of the act providing for their organization, and it seems quite clear that the association is a proper party to be sued in all matters in which the corporation is interested, unless the association is disqualified for that purpose by virtue of the appointment of a receiver or by his subsequent action as such under his appointment."

Again it is said: "Enough has already been remarked to show that the fourth proposition of defendants cannot be sustained, as the act of congress provides that the receiver, in making the basis for a dividend, shall include in the list not only claims proved before him to his satisfaction, but claims also adjudicated in a court of competent jurisdiction. * * * Claims presented by creditors may be proved before the receiver or they may be put in suit in any court of competent jurisdiction, as a means of establishing their validity and determine the amount owed by the association,

but the judgment when recovered will not give one creditor any lien on the property of the delinquent association, nor secure to the judgment creditor any preference over other creditors whose claims are proved before the receiver. All alike must await the action of the comptroller of the currency and be content with a just and legal distribution of the proceeds of the assets collected by the receiver and liquidated by the comptroller according to the act of congress in such cases made and provided." *Central Nat. Bank v. Ins. Co.*, 104 U. S. 54; *Hendee v. Railroad*, 26 Fed. Rep. 677. Under these decisions we take it to be within the jurisdiction of the circuit court to adjudicate upon this claim, and to enter such a decree as the law justifies and the case demands. The lower court had no authority, nor did it attempt to direct the course of the comptroller in the premises. The circuit court established this as a preferred claim against the bank, and its judgment is affirmed. All the judges concurring herein it is so ordered.