VIRGINIA GRAY, Appellant and Respondent, v. FIRST NATIONAL BANK AND TRUST COMPANY OF YONKERS, Respondent and Appellant.

(Argued January 19, 1934; decided February 27, 1934.)

*William J. Wallin* for defendant, respondent and appellant. The relation between the bank and the plaintiff on March 3, 1933, was that of debtor and creditor. Such relationship continued until the suspension of business under the bank holiday, beginning March 4, 1933. No trust fund was created. Plaintiff is not entitled to a preferential payment over general creditors. (*Genesee*

*Wesleyan Seminary* v. *U. S. F. & G. Co.*, 247 N. Y. 52; *Cook County Nat. Bank* v. *United States*, 107 U. S. 445; *Earle* v. *Pennsylvania*, 178 U. S. 449; *Liberty Nat. Bank* v. *McIntosh*, 16 Fed. Rep. [2d] 906; 273 U. S. 769; *Port Newark Nat. Bank* v. *Waldron*, 46 Fed. Rep. [2d] 296; *Blakey* v. *Brinson*, 286 U. S. 254; *Davis* v. *Elmira Sav. Bank*, 161 U. S. 275; *Palo Alto County* v. *Aldrich*, 199 Iowa, 1; *Gering* v. *Buerstetta*, 118 Neb. 54; *Fiman* v. *South Dakota*, 29 Fed. Rep. [2d] 776; 279 U. S. 841; *Chicago First Nat. Bank* v. *Selden*, 120 Fed. Rep. 212.)

*Horace M. Gray* for plaintiff, appellant and respondent. The defendant is trustee of the plaintiff's savings account balance. (*Davis* v. *Elmira Sav. Bank*, 161 U. S. 275; *Marine Bank of Chicago* v. *Fulton County Bank*, 2 Wall. [U. S.] 252; *Genesee Wesleyan Seminary* v. *U. S. F. & G. Co.*, 247 N. Y. 52; *Massey* v. *Fisher*, 62 Fed. Rep. 958; *Merchants Nat. Bank* v. *School District*, 94 Fed. Rep. 705; *Moreland* v. *Brown*, 86 Fed. Rep. 257; *Carlson* v. *Kies*, 75 Wash. 171; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *Ridden* v. *Thrall*, 125 N. Y. 572; *Northern Sugar Corp.* v. *Thompson*, 13 Fed. Rep. [2d] 829; *Greer* v. *Dalles Nat. Bank*, 98 Fed. Rep. 681; *Fogg* v. *Tyler*, 109 Me. 109; *State* v. *Grills*, 35 R. I. 70; *First Nat. Bank* v. *Hall*, 119 Ala. 64; *Stoller* v. *Coates*, 88 Mo. 514; *Blakey* v. *Brinson*, 286 U. S. 254; *Van Wagoner* v. *Buckley*, 148 App. Div. 808; *Shawmut Corp.* v. *Bobrick Sales Corp.*, 260 N. Y. 499.) The trust fund included the plaintiff's total balance. (*Davis* v. *McNair*, 48 Fed. Rep. [2d] 494; *Stoller* v. *Coates*, 88 Mo. 514; *Anderson* v. *Pacific Bank*, 112 Cal. 598.)

CROUCH, J. On March 3, 1933, the plaintiff had a savings account with the defendant bank, in which there was a balance of $27,728.07. About two-twenty o'clock P. M. on that day she went to the bank and stated that she

wished to purchase at the then market price $10,000 par value of Fourth Liberty Loan four and one-quarter per cent bonds, the cost thereof to be charged to her savings account. She was told that the bank would put in an order to its brokers for the bonds, if plaintiff would sign the customary form. She thereupon signed the following order:

"THE FIRST NATIONAL BANK & TRUST CO., 3 MAIN STREET, YONKERS, N. Y.

"No. 4691

"Date Mar. 3, 1933.

"Buy For my account and risk the following securities: I hereby authorize you to place the order with any broker having a membership on the New York Stock Exchange, and to charge my deposit account with you for cost of same.

"Name /sgd /Virginia W. Gray    Address 2 Sherwood Terrace

10M Liberty 4th 4¼

"Order placed on Mar. 3, 1933, at 2:20 P. M.

"JH."

The bank official told plaintiff that she should leave her pass book with the bank, as the exact cost of the bonds would not be known by the bank until the following day, and the bank could not make any charge or withdrawal from her account until then. The bank telephoned the order to its brokers and the bonds were purchased by the brokers about two-twenty-four o'clock P. M. The brokers billed the cost to the bank, which received the statement the following morning, March 4, 1933. The bank at that time was closed under the proclamation of the Governor of the State, and thereafter remained closed under the subsequent proclamation of the President of the United States.

On March 20, 1933, a conservator was appointed by the Comptroller of the Currency under the Bank Con-

servation Act of March 9, 1933. The bank has never been licensed to reopen or to do business as provided in the Bank Conservation Act. It is still in charge of the conservator. The bank has not paid for the bonds, nor have they been delivered to it. The cost of the bonds, with interest and brokerage as billed to the bank, was $10,247.78.

This action was brought on July 25, 1933, upon the theory that, by reason of the facts above stated, the entire balance in plaintiff's savings account was segregated from the assets of the bank and set aside as a trust fund out of which the purchase price of the bonds was to be paid. The judgment asked for was that defendant pay from said trust fund to its brokers the amount due for the bonds, and order said brokers to make delivery thereof to the plaintiff. For that relief plaintiff has been granted a summary judgment.

The conservator was not made a party to the action. Upon the argument a question was raised as to whether he should have been made a party and as to what, in any event, would be the effect of a judgment against the bank or against its conservator.

Section 203 of the Bank Conservation Act (U. S. Code, tit. 12, § 203) provides as follows: " Conservator: appointment, powers and duties; compensation. Whenever he shall deem it necessary in order to conserve the assets of any bank for the benefit of the depositors and other creditors thereof, the Comptroller of the Currency may appoint a conservator for such bank and require of him such bond and security as the Comptroller of the Currency deems proper. The conservator, under the direction of the Comptroller, shall take possession of the books, records, and assets of every description of such bank, and take such action as may be necessary to conserve the assets of such bank pending further disposition of its business as provided by law. Such conservator shall have all the rights, powers and privileges

now possessed by or hereafter given receivers of insolvent national banks and shall be subject to the obligations and penalties, not inconsistent with the provisions of this title, to which receivers are now or may hereafter become subject. During the time that such conservator remains in possession of such bank, the rights of all parties with respect thereto shall, subject to the other provisions of this subchapter, be the same as if a receiver had been appointed therefor. * * * "

It is the function of a conservator to conserve and not, as in the case of a receiver, to liquidate. Nevertheless, by the terms of the act the rights of all parties are " the same as if a receiver had been appointed." For guidance on jurisdictional and procedural matters we may, therefore, resort to decisions made in receivership cases. It seems that the taking over of a national bank by the Comptroller of the Currency still leaves the bank capable of suing and being sued. (*Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. [U. S.] 383; *Green* v. *Wallkill Nat. Bank*, 7 Hun, 63.) Nor is the receiver a necessary party (*Denton* v. *Baker*, 79 Fed. Rep. 189), though he may appear and defend a suit against the bank. (*United States* v. *Young*, 128 Fed. Rep. 111; *National Shoe & Leather Bank* v. *Mechanics Nat. Bank*, 89 N. Y. 440.) The receiver takes legal title to the property of the bank as a trustee, but holds subject to all outstanding rights. (*Scott* v. *Armstrong*, 146 U. S. 499.) State courts may determine a claim and establish it as preferred (*Earle* v. *Pennsylvania*, 178 U. S. 449; *Flint Road Cart Co.* v. *Stephens*, 32 Mo. App. 341), so far at least as preferences may arise from contract (*Davis* v. *Elmira Sav. Bank*, 161 U. S. 275, 288); but the judgment should merely direct the claim to be recognized, certified to the Comptroller and paid in the due course of administration. (*Merrell* v. *First Nat. Bank*, 75 Fed. Rep. 148; affd., 173 U. S. 131.) We are, therefore, of the opinion that while the action was properly brought

against the bank alone, the judgment in its present form goes too far.

The fundamental question, however, is whether the contract between plaintiff and the bank served to create a trust fund in the hands of the bank to be used for a specific purpose. We are unable to see that the original relationship of debtor and creditor between the plaintiff and the bank was in any wise changed by what was said and done on the afternoon of March 3, 1933. The bank undertook to render a service commonly rendered by all banks to their customers. Acting at the request of the plaintiff it bought bonds for her through its brokers. Both parties understood that plaintiff's credit was to be debited with the cost of the bonds, probably on the following morning, when that cost should become known. For the purpose of making that debit the bank book was left in the possession of the bank. No entry was made therein or on the books of account of the bank; nor could such entries have been made until the cost of the bonds was known. Nothing was said or done consistent with an intent to segregate and set aside any identifiable fund to be used for the payment of the bonds. To say that the entire balance in plaintiff's account was segregated and set aside merely because the bank book was left in the hands of the bank, is to give a significance to that fact not borne out by the evidence.

Whether the whole or a part of a general deposit becomes by some transaction a special deposit or fund, to be kept intact and used for a specific purpose, depends, as in the case of any other contract, upon the intent of the parties. The evidence of that intent is what was said and done when the transaction took place. The evidence here falls far short of disclosing such an intent under our own decisions (Cf. *People* v. *City Bank of Rochester,* 96 N. Y. 32; *Shawmut Corp.* v. *Bobrick Sales*

*Corp.*, 260 N. Y. 499) and still farther under the law as stated in *Blakey* v. *Brinson* (286 U. S. 254).

The judgment of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs to the defendant in this court and in the Appellate Division.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., not voting.

Judgment accordingly.